## South Covington & Cincinnati Street Railway Company v. Burns, By, et al.

(Decided October 31, 1912.)

Appeal from Kenton Circuit Court
(Common Law and Equity Division).

1. Street Railroads—Action Against For Personal Injury—Instructions.—In an action against a street railway company for personal injuries, the petition alleging that while the boy was upon the car he was thrown, fell or jerked from the car by the wanton and gross carelessness of the defendant, its agents and officers, it was not error to permit the jury to find for the plaintiff if they believe he was upon the car with the knowledge or consent of the officials in charge, nor was it error to allow a recovery for the wrongful acts of the conductor as both the conductor and motorman were officers and agents of the company in charge of the car.

2. Same—Evidence—Verdict.—It cannot be said that the verdict is flagrantly against the weight of the evidence.

3. Same—Verdict—Not Excessive.—All of boy's foot except a part of the heel had to be amputated and this caused the muscles to become atrophied thus diminishing the size of the leg.

R. C. SIMMONS for appellant.

B. F. GRAZIANI and O'REAR & WILLIAMS for appellee.

OPINION OF THE COURT BY JUDGE NUNN—Affirming.

Appellee, Matthew Burns, brought this action by his next friend, against appellant to recover damages for personal injuries received. The injuries were produced by one of appellant's cars running over and mashing one of his feet. There were two trials of the case in the lower court; the first terminated in a disagreement of the jury, but the second resulted in a verdict and judgment for appellee in the sum of $7,100. Appellant asks a reversal of the judgment for three reasons; first, because of errors in the instructions given; second, because

the verdict is flagrantly against the weight of the evidence; and third, because the verdict is excessive.

The facts with reference to appellee's injuries are, in substance, appellee, a boy seven years of age at the time of his injury, resided on Twenty-first street, near Russell street, in Covington, Kentucky, and he, with a number of other boys, was playing in the street at this point when a street car belonging to appellant approached and stopped to allow two ladies to board it. When the car stopped, appellee and another boy near his own age, approached the front end of the car and appellee asked the motorman to permit him to mount the front platform and ring the gong. The motorman granted his request and opened the gate so that he could get on, and appellee got on the platform, rang the bell and was then told by the motorman to get off, but before he could do so the motorman started the car and appellee, who had started to alight, was holding to the top rail of the gate and the conductor came up, told him to get off and struck the hand with which appellee was holding to the rail, knocked it loose therefrom and caused him to fall where the wheels of the car ran over and mashed his foot to such an extent that it had to be amputated. It appears that the car had moved ten or twelve feet forward before the conductor got to appellee, and when the car was stopped appellee was found on the ground near one of the rails of the track, three or four feet to the rear of the car. The physician who attended appellee, with the hope and intention of saving as much as possible of his foot, only amputated his four smaller toes, but later found that was not sufficient so he amputated the foot at the instep still hoping to save the remainder of it, but found afterwards that it would be absolutely necessary to sever all the foot except a part of the heel, which he did. The above are the facts as they appear in the testimony of appellee and the physician. The testimony of the other boy, who was ten years of age at the time of the trial which was had two years after the accident, differed with appellee's in this respect: He stated that after appellee got upon the platform with the permission of the motorman and rang the gong, he then asked the motorman if he could ride a little ways and the motorman told him yes; that in a few moments the conductor appeared and told appellee to

get off the car which was then moving; that the gate was opened for him to leave the car which appellee started to do; that when he reached the steps he caught hold of the gate with one hand and while occupying this position, either the conductor or motorman struck his hand, knocked it loose from the gate and caused him to fall.

Appellant's testimony was to the effect that neither the conductor nor motorman gave appellee permission to get upon the platform of the car to ring the gong or for any other purpose; that they did not strike his hand and knock it loose from the gate or anything; that they did not know of appellee being upon or about the car until they heard him scream when hurt. It appears that appellant's theory was that the boy was hanging to something on the side of the car stealing a ride and fell off and was run over by the rear wheel of the car. No one saw the boy swinging to the side of the car or to any other part of the car, other than as stated by appellee and his witnesses, and it appears that there was nothing on the side of the car that the boy could hold to. Appellant proved by one of the children who were on the street near the curb when the car came up and stopped, that appellee said, "here is a good chance for a hop," and started in the direction of the car. Neither this witness nor any of the other children who testified, saw the acts and conduct of appellee or the officials in charge of the car, at and immediately previous to the time appellee was injured. Three of the passengers who were on the car at the time of the accident, were introduced by appellant. They testified, in substance, that they did not notice anything taking place on the front platform; that they did not notice appellee; that they did not see the conductor pass from the rear end of the car where he received the ladies who entered, to the front platform. One of them stated that he was seated about the center of the car; that he heard the boy scream, looked out the window nearest to him and saw the boy lying immediately below it. The steps of the car and the car itself were inspected by the jury. As before stated, there was nothing on the side of the car to which the little boy could swing, and, besides, the place at which he was seen immediately after he first screamed, shows conclusively, if true, that his foot was run over by the front wheels of the car first. Appellant also introduced statements made by the boy Richardson on the first trial

which contradicted some of his testimony on the second trial. It appears that he testified on the first trial that the car was stopped to allow two ladies to get off, and on the last trial he stated that the ladies either got off or on, he did not know which. There were several discrepancies in this witness' statements on the two trials, but they were all of an immaterial character. All this character of testimony was introduced in an effort to have the jury discredit the testimony of the boys upon the material facts. The jury was the triers of the question and had a right to believe the testimony of the boys to be true or to conclude that it was false. It is true that appellee was an interested witness, but the boy Richardson was not, so far as the record shows. It is also true that the conductor and motorman were interested in holding their positions, and, besides, if the accident occurred as the boys say it did, they committed a crime. The mere statement of the substance of the evidence is sufficient to show that the verdict was not flagrantly against the weight thereof, unless we usurp the functions of the jury and determine that the little boys committed perjury. In the case of L. & N. R. R. Co. v. Eickman, 137 Ky., 331, this court said:

"Our duty goes no further than to determine whether there was evidence to support the verdict, and our decision of that question is not to be controlled by our opinion as to whether the verdict is in accordance with or against the weight of the evidence."

Appellant's counsel claim that the court erred in permitting the jury to find for appellee if he was upon the front of the car with the *knowledge* or *consent* of the officials in charge, as the pleading and proof only showed that he was there by permission of the motorman, and that the court committed another error in the same instruction by allowing appellee to recover for the wrongful acts of the conductor, when the petition complained only of the conduct of the motorman. They contend that the court, by permitting recovery under the conditions above named, injected into the case issues which neither the pleadings nor proof justified. One of the allegations of the petition is as follows:

"And while upon said car the said infant plaintiff, was thrown, fell, or jerked from said car through the

gross and wanton carelessness of said defendant company, its agents and officers.''

The following excerpts are quoted from appellant's answer, to-wit:

''Defendant denies that its motorman, or any other officer or agent permitted or requested or allowed plaintiff to come upon its car while it was moving or at all; * * * denies that he permitted, requested or allowed plaintiff's presence upon the car; denies that the motorman consented to the plaintiff being upon the car; * * * denies that the plaintiff was thrown or jerked from the car; denies that he fell from the car; * * * denies that plaintiff was crippled by the negligence of this defendant or its officers or agents.''

Thus it appears that the pleadings and proof fully authorized the court to give the instructions complained of. It was immaterial whether it was the motorman or conductor of the car that knocked appellee's hand loose from the gate while the car was in motion, as they were both officers and agents of the company in charge of the car. Nor does it matter whether they or either of them invited or consented for appellee to board the car and tap the gong. If they knew he was on the car and expelled him while it was in motion, they were guilty of negligence. If there were any errors in the instructions, they favored appellant rather than appellee.

The complaint that the verdict for $7,100 is excessive, is the only question left for consideration. Dr. Eckman, the physician who attended appellee, and who was at the head of the Covington General Hospital in the city of Covington, stated that he attempted to save the boy's foot and at first severed only the four smaller toes, but found later that two other operations had to be performed as before stated; that after the third operation none of the boy's foot was left except the back part of the heel. The boy was confined to his bed for six months and must have suffered excruciating pain, especially while undergoing the three operations. The doctor testified that the loss of the foot had caused the leg to greatly diminish in size; that the muscles had become atrophied; that the calf of the leg had atrophied and disappeared because the muscles were not brought into play by the action of an instep, and that as he had no foot to move the leg it simply acted as a wooden leg.

We cannot say, under these facts, that the verdict is excessive. Many larger verdicts in behalf of infants have been sustained by this court when their injury and suffering did not materially exceed that endured by appellee. See Louisville R. R. Co. v. Bryant, 142 Ky., 159. In the case of South Covington & Cincinnati Ry. Co. v. Weber, 26 Ky. L. R., 922, this court sustained a $10,000 verdict in favor of a child five years of age.

For these reasons, the judgment of the lower court is affirmed.